UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| CHERYL BREWER SOUTHWORTH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 2:05-cv-00071- JCH |
| ) | |
| MISSOURI DEPARTMENT OF ) | |
| CORRECTIONS, et al., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

This Matter is before the Court on Correctional Medical Services' ("CMS") Motion for Summary Judgment, filed February 6, 2005 (Doc. No. 12). Plaintiff has not responded to this motion.

## BACKGROUND

Plaintiff Cheryl Brewer Southworth ("Southworth") is presently an inmate of the Missouri Department of Corrections ("MDOC").[1] Since November, 2004 she has been housed at the Women's Eastern Reception, Diagnostic and Correctional Center ("WERDCC") in Vandalia, Missouri. At all relevant times, MDOC contracted with CMS to provide its inmates with health care services.

The gravamen of Plaintiff's complaint is that CMS violated her Eighth Amendment rights by exhibiting deliberate indifference to her serious medical needs. (Mot. Prelim. Inj., Doc. No. 4). To show the serious medical needs that CMS has ignored, Plaintiff has provided the Court with her "Health Log." This document, some 64 pages in length and covering sporadic time periods throughout 2001-2005, describes how Plaintiff perceived her health on each day. (Compl., Doc. No. 3, unnumbered documents at pg. 17-46, 1-35). An example of typical symptoms listed therein includes:

---

[1] Southworth has been in MDOC custody since December, 1995. (Mot. Sum. J., Doc. No. 12 Ex C-2).

dizziness; weakness; difficulty walking; "left side dragging"; cold sweats; bruising; tremors; severe eye and head pain; right hip pain with difficulty urinating; pain in the abdomen and chest; visual field disturbances; heart arrhythmia; and petechial hemorrhaging. (Id.).[2]

Plaintiff's health log and medical records show that she has complained of medical problems since at least 2001.[3] (Compl., Doc. No. 3 Ex. 1, unnumbered documents at page 17; Mot. Sum. J., Doc. No. 12 Ex C-2-C-5). Although Plaintiff brings this action based on events occurring between November, 2004 and October, 2005, a brief overview of her care prior to that time is helpful. The first event of significance occurred in early January, 2002 when Plaintiff complained of limited motor skills, dizziness, and memory problems. (Mot. Sum. J., Doc. No. 12 Ex C-2). In response to these complaints, Plaintiff was examined by CMS nurses and physicians;[4] she also received two scans of her brain: a Computer Tomography [5] ("CT") scan in January, 2002 and Magnetic Resonance Imaging Scan ("MRI") scan in February, 2002. (Id. at Ex.C-2, C-4, C-5). After both the CT and MRI came back normal, she met with a CMS physician who explained the results to her, told her "no one is guaranteed wellness. You have been given better medical supervision than most," and told her that the

---

[2]Plaintiff has also sent the Court a series of newspaper and periodical articles that characterize CMS as a negligent, indifferent, and substandard provider of health services to Missouri's inmates. (Doc. No. 17, unnumbered documents at pg. 23-30, 1-28). Plaintiff also sent three unsworn affidavits and one sworn affidavit stating that CMS is responsible for Plaintiff's failing health because it refuses to treat her. (Id. at unnumbered documents at pg. 1-22).

[3]The Court has copies of Plaintiff's medical records from January 1, 2002 until January 18, 2006. (Mot. Sum. J., Doc. No. 12 Ex C-1-C-5).

[4]On a macro scale, Plaintiff's medical records show that between January 1, 2002 and January 18, 2006, Plaintiff was evaluated by a nurse 161 times, a physician 61 times, and refused various medical procedures, tests, and medications 40 times. (Mot. Sum. J., Doc. No. 12 Ex. C-2).

[5]Plaintiff refused to let the non-CMS medical personnel inject her with contrast for the CT. This lack of contrast made the CT less informative because contrast provides information about the vascular compartments. Stedman's Medical Dictionary 1842 (27th ed. 2000).

root of her physical problems may be psychological in nature.[6] (Id. at Ex. C-6). Throughout February, 2002 until Fall, 2004 Plaintiff settled into a pattern of making frequent trips to the CMS medical staff, with complaints ranging from hay fever to brain pain. (Id. at Ex. C-2). When necessary she received treatment from the CMS medical staff; however, her record is replete with notations finding that her complaints were unsupported by her physical examination. (Id.).

In November, 2004 Plaintiff was transferred to WERDCC and spent roughly a week in medical TCU[7] after the staff found she had a fast and irregular heart beat, high blood pressure, and trouble walking. (Id.). The record also notes that Plaintiff complained of not feeling well for the past nine months and had stopped taking her thyroid medication eight months ago. (Id.). While at the TCU, she received care from the CMS medical staff and was discharged about a week later. (Id.). In December, 2004 Plaintiff began filing grievances to contest the handling of her medical treatment. (Compl., Doc. No. 3, unnumbered documents at pg. 1-16). She filed an Informal Resolution Request on December 20, 2004 asking for medical treatment by a non-CMS physician to diagnosis possible cancer, brain lesions, or multiple sclerosis. (Mot. Sum. J., Doc. No. 12 Ex. C-11). Plaintiff claimed that despite her host of symptoms the CMS physician only saw her twice; denied her a wheelchair; told her "try not to hurt yourself when you fall down;" and that she must see a psychiatrist before any further treatment. (Id.). In response to her Informal Resolution Request, the Director of Nursing referred her to a CMS physician for a reexamination. (Id.).

---

[6] Her medical records indicate she had an appointment with a psychologist in August, 2004 and January, 2005. (Mot. Sum. J., Doc. No. 12 Ex. C-2). The records do not clearly indicate what these evaluations found..

[7] Although not entirely clear from the record, the "medical TCU" appears to be the prison infirmary/hospital.

On February 14, 2005 Plaintiff filed an Offender Grievance, asking for the use of a wheelchair.[8] (Id.). In response, on February 25, 2005, she was granted a wheelchair for long distances only. On April 20, 2005, Plaintiff filed an Offender Grievance Appeal, complaining that she was not receiving proper treatment and not being promptly seen by medical personnel. (Id.). In response, CMS made findings, dated June 15, 2005, that a physician had examined her, ordered diagnostic tests on her heart, and made no clinical findings warranting a referral. (Id.).

Plaintiff's medical records show that she received the following medical care from November 1, 2004 to October 31, 2005: she was seen by a nurse 45 times; by a physician 27 times; had blood work done 7 times; had a chemical stress thallium test[9]; had a Holter monitor[10]; refused medication 6 times; refused a mammogram; and refused a gynecological examination. (Id. at Ex. C-2; C-3).

Pursuant to 42 U.S.C. § 1983, Plaintiff filed this action on Oct 31, 2005. In her Complaint she asks for nominal damages, preliminary injunctive relief, and injunctive and declaratory relief. (Mot. Prelim. Inj., Doc. No. 4). The Court, on November 2, 2005, denied Plaintiff's motion for preliminary injunctive relief and also dismissed Defendant MDOC pursuant to 28 U.S.C. § 1915(e)(2)(B). (Order, Doc. No. 6). Defendant CMS filed this Motion for Summary Judgment on February 6, 2006.

## SUMMARY JUDGMENT STANDARD

The Court may grant a motion for summary judgment if, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The substantive law

---

[8] Plaintiff had recently fallen and complained of having trouble walking.

[9] This test evaluates the effect of stress on cardiovascular function. See Stedman's Medical Dictionary 1810, 1817 (27th ed. 2000).

[10] A Holter Monitor is a device that records the heart rhythm continuously for 24 hours.

determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

A moving party always bears the burden of informing the Court of the basis of its motion. Celotex, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of its pleadings. Anderson, 477 U.S. at 256.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in its favor. Anderson, 477 U.S. at 255. The Court's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. Id. at 249.

## DISCUSSION

In its Motion for Summary Judgment, CMS makes two arguments. First, it argues that Plaintiff has failed to establish a § 1983 claim because she has not pointed to any policy over which CMS has final decision making authority. Second, it argues that it provided her with health care.

In a § 1983 action, a plaintiff is estopped from relying on the doctrine of *respondeat superior*. Givens v. Jones, 900 F.2d 1229, 1233 (8th Cir. 1990); Dashley v. Corr. Med. Servs., Inc., 345 F. Supp. 2d 1018, 1021 (E.D. Mo. 2004). Absent *respondeat superior*, a plaintiff must show a company was acting under color of state law and engaging in its own unconstitutional policies. West v. Atkins, 487 U.S. 42, 48 (1988). A company acts under color of state law when it can be characterized as a

state actor. Id. at 49. CMS is fairly characterized as a state actor because the Supreme Court has characterized providers of medical treatment to inmates as such. See id. at 57 ("[R]espondent's delivery of medical treatment to inmate was state action fairly attributable to the State, and that respondent therefore acted under color of state law for purposes of § 1983."); see also Crooks v. Nix, 872 F.2d 800, 804 (8th Cir. 1989) ("where a prisoner needs medical treatment prison officials are under a constitutional duty to see that it is furnished."); Dashley, 345 F. Supp. 2d at 1021.

A corporation acting under color of state law will only be held liable under § 1983 for its own unconstitutional policies. Crumpley-Patterson v. Trinity Lutheran Hosp., 388 F.3d 588, 590 (8th Cir. 2004)(citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978)). The proper test is whether there is a policy, custom, or action by those who represent official policy that inflicts injury actionable under § 1983. Id.; Johnson v. Hamilton, 452 F.3d 967, 973 (8th Cir. 2006); Sanders v. Sears Roebuck & Co., 984 F.2d 972, 976 (8th Cir. 1993). "A 'policy' is an official policy, a deliberate choice of a guiding principle or procedure made by ... [an] official who has final authority regarding such matters." Betchel v. City of Benton, 250 F.3d 1157, 1160 (8th Cir. 2001). An actionable custom is: "(1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by [CMS employees]; (2) the deliberate indifference to or tacit authorization of such conduct by [CMS'] policymaking officials after notice to the officials of that misconduct; and (3) the plaintiff was injured pursuant to [CMS'] custom." Dashley, 345 F. Supp. 2d at 1022 (citing Jane Doe A. v. Special Sch. Dist., 901 F.2d 642, 646 (8th Cir. 1990); accord Kuha v. City of Minnetonka, 365 F.3d 590, 604 (8th Cir. 2003).

Plaintiff has not plead any CMS policy that caused the allegedly deficient treatment she received. See Sears, 984 F.2d at 976 (affirming summary judgment because plaintiff pled no policy or custom to support his § 1983 action). Additionally, Plaintiff's evidence does not raise a genuine issue

of material fact that CMS engaged in an unconstitutional custom. Plaintiff's evidence, namely her Health Log, describes discreet actions taken towards her without any reference to a policy or custom of CMS. See Dashley, 345 F. Supp. 2d at 1022 (dismissing claims in a similar factual circumstance). Plaintiff has come forward with one sworn affidavit, and three unsworn affidavits that claim CMS failed to treat Plaintiff; her only other evidence of a custom is periodical articles discussing CMS' woeful track record. The periodical articles and the unsworn affidavits constitute hearsay, and cannot be relied upon when ruling on a summary judgment motion. See Tuttle v. Lorillard Tobacco Co., 377 F.3d 917, 924 (8th Cir. 2004) ("The district court must base its determination regarding the presence or absence of material fact of a factual dispute on evidence that will be admissible at trial."); see also Fed. R. Evid. 801(c); Fed. R. Civ. P. 56(e). The sworn affidavit describes discreet actions taken towards Plaintiff; it does not allege personal knowledge of a custom of deliberately ignoring inmates' medical needs. Because no facts exist supporting the existence of a custom or policy of CMS, summary judgment should be granted in CMS' favor.

Even assuming that Plaintiff could show evidence of a custom by the Defendant, summary judgment in CMS' favor should still be granted. CMS maintains that the Plaintiff's claims must be dismissed because it provided Southworth with "pertinent health care." (Mot. Sum. J., Doc. No. 12).

The Eighth Circuit has held that "[t]he Eighth Amendment requires prison officials to provide humane conditions of confinement, and [o]ne condition of confinement is the medical attention given to a prisoner." Aswegan v. Henry, 49 F.3d 461, 463-64 (8th Cir. 1995) (internal quotations and citations omitted). "[A] prison official violates the Eighth Amendment by being deliberately indifferent *either* to a prisoner's *existing* serious medical needs *or* to conditions posing a substantial risk of serious *future* harm." Id. at 464 (internal quotations and citation omitted) (emphasis in original). To show deliberate indifference, Southworth must show "that [she] suffered objectively serious medical needs,

and [that CMS] actually knew of but deliberately disregarded those needs." Johnson, 452 F.3d at 972-73; see also Tlamka v. Serrell, 244 F.3d 628, 633 (8th Cir. 2001). "The prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." Estate of Rosenberg by Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995). Southworth must prove "that the prison doctors knew of, yet disregarded, an excessive risk to [her] health" Logan v. Clarke, 119 F.3d 647, 649 (8th Cir. 1997) (citing Farmer v. Brennan, 511 U.S. 825, 837 (1994)) and "that their unconstitutional actions in fact caused [her] injuries." Gibson v. Weber, 433 F.3d 642, 646 (8th Cir. 2006). "Prison officials do not violate the Eighth Amendment when, in the exercise of their professional judgment, they refuse to implement a prisoner's requested course of treatment." Long v. Nix, 86 F.3d 761, 765 (8th Cir. 1996).

Upon consideration, the Court need not decide whether Southworth's allegations satisfy the objective component of an Eighth Amendment violation, because it is clear from the evidence presented they do not meet the subjective requirements.

In the past year, Plaintiff saw a CMS physician 27 times, an average of about once every two weeks. (Doc. No. 12, Ex. C-1). Furthermore, she saw a CMS nurse almost weekly, received blood work seven times, and received two specialized types of heart testing: a stress test and a Holter monitor. (Id.). CMS and the prison allowed her the use of a wheelchair for traveling long distances. While it is clear that CMS did not acquiesce to Plaintiff's every request over the last year, or last four years, it clearly made an effort to treat the Plaintiff.[11] Based on these uncontested medical records, no evidence exists to support a finding that CMS deliberately disregarded Plaintiff's known medical needs.

## **CONCLUSION**

---

[11]Additionally, a cursory examination of Plaintiff's medical record shows she did not always follow medical advice. For example, she refused to take her thyroid medication and refused important preventative care like mammograms and gynecological exams.(Doc. No .12 Ex. C-1- C-3).

Accordingly,

**IT IS HEREBY ORDERED** that Defendant CMS' Motion for Summary Judgment (Doc. No. 12) is **GRANTED**, and Plaintiff's claims against Defendant CMS are dismissed with prejudice.

**IT IS FURTHER ORDERED** that all pending motions (Doc. No. 18) are denied as moot.

An appropriate judgment will accompany this order and memorandum.

Dated this 18th day of September, 2006

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE